FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ NOV 1 0 2005 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

ISAAC CRAIG,

        Petitioner,

v.

PEOPLE OF THE STATE OF NEW YORK,

        Respondents.

No. 02-CV-9 (JBW)

MEMORANDUM AND ORDER

JACK B. WEINSTEIN, Senior District Judge:

Petitioner Isaac Craig ("Craig") seeks a writ of habeas corpus vacating a sentence imposed upon a finding that he had violated the conditions of his plea agreement. For the reasons stated at the evidentiary hearing on November 3, 2005 and summarized below, the petition is denied.

I.    Facts

On January 19, 1999, petitioner Isaac Craig ("Craig") pled guilty in Suffolk County Court to a charge of attempted criminal sale of a controlled substance in the third degree, a felony. *See* N.Y. Penal Law §§ 220.39 and 110.00. Pursuant to a plea agreement, he was allowed to enter the Treatment Alternatives to Street Crime program ("TASC"), which provides drug abuse treatment for defendants deemed amenable to rehabilitation. When taking the plea, the state court judge in essence stated to Craig that, if he successfully completed the program, he would be allowed to plea guilty to a misdemeanor and receive a conditional discharge; if he failed, he would be sentenced on the felony charge. Tr. of Plea, Jan. 19, 1999 3:4-16. The transcript reads

1



as follows:

> THE COURT: Just so we understand each other, there's no misunderstanding. This is what we anticipate [d]oing. You're going to plead to Attempted Sale Third?
> THE DEFENDANT: Right.
> THE COURT: I'm going to sentence you to 4-1/2 to 9. You'll be given an opportunity to take TASC. I'm going to promise you 4-1/2 to 9. Not going to sentence you. You'll be given an opportunity to apply to TASC. If you are not found eligible for TASC it's going to be 3 to 6. If you are found eligible and you complete TASC, eventually get a conditional discharge; all right?
> If you are found eligible and you go to TASC and you drop the ball, in other words, you let the air out of the program, you get 4-1/2 to 9. Any other promises?
> THE DEFENDANT: No, sir.
> THE COURT: Do you understand?
> THE DEFENDANT: I understand.

In March of 1999, Craig entered Phoenix House, a residential program approved by TASC. Craig dislocated his toe, apparently through no fault of his own, in April of 1999. He was taken by employees of Phoenix House to the Veterans Administration Hospital in Northport. Thereafter, Craig had himself transferred to the Psychiatric Ward of the V.A. Hospital in Manhattan. Of his own volition, Craig eventually left the hospital in Manhattan.

The District Attorney for Suffolk County became aware of the events terminating Craig's relationship with TASC. He charged Craig with violating the conditions of his supervision. Craig was sentenced on August 26, 1999, as a second felony offender, to four and a half to nine years imprisonment.

On December 28, 2001, Craig filed a petition for a writ of habeas corpus in this court. Counsel was appointed for him. After a long delay by petitioner in his prosecution of this matter, it was heard and decided on November 3, 2005.

## II. Law

Section 2254 of Title 28 of the United States Code provides that an application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Craig urges his application under both grounds, claiming that the state trial court did not grant him a hearing before sentencing him as required by *Ricketts v. Adamson*, 483 U.S. 1, 107 S. Ct. 2680 (1987), and that the state trial court's decision was unreasonable.

*Ricketts* does not support petitioner's claimed right to a hearing before resentencing for breach of a condition of his initial conditional sentence. The issue in *Ricketts* was whether double jeopardy had been imposed upon a defendant who was retried after the State claimed he had breached the terms of his plea agreement. It only incidentally mentioned the scope of the hearing afforded to the petitioner by the trial court when determining whether he had breached the agreement and did not rule that such a hearing was required. *See Ricketts*, 107 S. Ct. at 2687-8 (Brennan, J., dissenting) (observing that the State Supreme Court had "denied [petitioner's] request to introduce other evidence that he maintained would demonstrate that at the time of sentencing the State shared Adamson's understanding of the agreement[]," and opining that "the Court of Appeals would have been justified in remanding for the evidentiary hearing denied

3

[petitioner] in state court").

Other cases do establish a right to a hearing before resentencing for breach of a condition of sentence. Due process protections apply to sentencing procedures, though with less force than at trial. *U.S. v. Fatico*, 579 F.2d 707, 711 (2d Cir. 1978). For example, before parole may be revoked, a parolee is entitled to "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 2602 (1972). The Court of Appeals for the Second Circuit, in a case similar to the present one, applied *Morrissey* to a resentencing for breach of a condition of an initial sentence. *See Torres v. Barbary*, 340 F.3d 63, 69 (2d Cir. 2003) ("The determination to resentence for the breach of a condition of a sentence is analogous to the determination to revoke the parole of a parolee for failure to comply with the conditions of parole.").

In *Torres*, the petitioner had been charged with a felony and pled guilty on the understanding that he would be permitted to enter a rehabilitation program at the Phoenix House. Upon completion of the program, petitioner would return to court, his felony plea would be replaced by a misdemeanor plea, and he would be sentenced to time served in the rehabilitation program. *Torres*, 340 F.3d at 70. The state trial court used an identical procedure in the present matter. Tr. of Plea 3:4-12. In *Torres*, as here, the petitioner was accused of violating the conditions of his sentence and was resentenced to four and a half to nine years imprisonment. *Torres* at 70. Torres applied for a writ of habeas corpus. The district court denied the application, *Torres v. Barbary*, 2002 WL 1218276 (S.D.N.Y. Jun. 4, 2002), and the Court of Appeals reversed.

4

## III. Application of Law to Facts

Though the posture of this matter is similar to that of *Torres*, the conduct of the state trial court is not. The Court of Appeals rested its decision in *Torres* on the facts "unique to this case"—viz., the total reliance by the trial court on a hearsay report that itself contained only uncorroborated statements of unnamed informants; omission of any finding by the trial court as to the reliability of the informants or as to reasons for the non-disclosure of their identities; failure of the trial court to conduct some kind of hearing, including provision for the examination of Torres under oath; lack of preponderating evidence of Torres' wrongdoing; and the gross disparity between a sentence that would release Torres to society on a plea to a misdemeanor charge after completion of the residential program and the four and a half to nine year felony sentence to state prison that he received for violating the original sentence condition. *Id.* at 72.

The facts in the present matter differ significantly. The state court judge did not base his decision to resentence Craig on multiple hearsay. Rather, Craig stated directly that he had been discharged from the residential program because he was medically unfit. Tr. of Aug. 26, 1999 Sent. 5:9-12. The state court judge in Craig's case held a hearing, and allowed both Craig and his attorney to argue at length against imposition of the felony sentence. Tr. 2:14-13:25, 18:20-22:7.

Craig argued in the state courts, and again in this court, that he was not at fault for his discharge from the residential program. Though not without ambiguities, the transcript of the original colloquy quoted above between the state court judge and Craig suggests that fault was immaterial. The court indicated that Craig must complete the TASC program in order to have the advantage of the lowest possible sentence, that is, conviction of a misdemeanor. Craig had a

5

substantial criminal record—29 arrests in 18 years, 11 pending misdemeanor charges in state court and numerous failures in other rehabilitation programs—and it was not inappropriate for the court to explain to petitioner at that time, using language which Craig apparently understood, that he had to finish the program in order to show rehabilitation. It was, as respondent's counsel has suggested, a "no fault" arrangement. Thus, if the defendant were discharged for any reason, be it failure that was his own or beyond his control, there would be no basis for a finding of rehabilitation warranting a reduction to a misdemeanor.

This hearing satisfied the requirements of due process under the circumstances. *See Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976 (1974) ("the minimum requirements of procedural due process *appropriate for the circumstances* must be observed." (emphasis added)).

The *Torres* court faulted the state trial court for sentencing Torres to a term of four and a half to nine years when it had previously offered a plea of guilty to a misdemeanor and time served in the residential program (about six months). It should be noted that a four and a half to nine year sentence in the instant case was substantially less than the sentence that would have been imposed under the Rockefeller Drug Laws had Craig gone to trial and been convicted. The evidence against him was strong: he had sold drugs to an undercover officer and admitted doing so. As a second felony offender convicted of a Class B felony, he would have faced a sentence of nine to 21 years imprisonment. *See* N.Y. Penal Law § 70.06(3)(b).

At the hearing in this court, state defense counsel testified that it was for this reason that he did not move to set aside the plea and seek a trial: the risk to defendant if he had withdrawn his plea would have been too great. Four and a half to nine years provided a substantial advantage which counsel properly did not want to give up—as Craig apparently then well

understood.

In light of the evidence before it, the state trial court's conclusion was reasonable. The defendant and his attorney had an extensive opportunity to argue their case. The trial court was fully apprised of the record and, on the merits, the Appellate Division properly affirmed. There was no error on the part of the trial judge or the Appellate Division.

Even were the defendant now to try to amend his petition to claim inadequacy of state counsel, the petition would have to be denied because his state counsel provided effective representation when not seeking to set aside the advantageous deal that he had made and which has benefitted the defendant who is currently out on parole. (The trial court's evaluation of lack of rehabilitation is supported by Craig's subsequent imprisonment for violation of parole after he was released from prison.)

## IV. Conclusion

Petitioner is unable to demonstrate that the state court decision was contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The petition for a writ of habeas corpus is denied.

No certificate of appealability is issued since no substantial constitutional issue is raised.

SO ORDERED.

Hon. Jack B. Weinstein

Dated: November 8, 2005
      Brooklyn, New York

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

ISAAC CRAIG,

        Petitioner,

v.

PEOPLE OF THE STATE OF NEW YORK,

        Respondents.

No. 02-CV-9 (JBW)

MEMORANDUM AND ORDER

---

JACK B. WEINSTEIN, Senior District Judge:

Petitioner Isaac Craig ("Craig") seeks a writ of habeas corpus vacating a sentence imposed upon a finding that he had violated the conditions of his plea agreement. For the reasons stated at the evidentiary hearing on November 3, 2005 and summarized below, the petition is denied.

I.    Facts

On January 19, 1999, petitioner Isaac Craig ("Craig") pled guilty in Suffolk County Court to a charge of attempted criminal sale of a controlled substance in the third degree, a felony. *See* N.Y. Penal Law §§ 220.39 and 110.00. Pursuant to a plea agreement, he was allowed to enter the Treatment Alternatives to Street Crime program ("TASC"), which provides drug abuse treatment for defendants deemed amenable to rehabilitation. When taking the plea, the state court judge in essence stated to Craig that, if he successfully completed the program, he would be allowed to plea guilty to a misdemeanor and receive a conditional discharge; if he failed, he would be sentenced on the felony charge. Tr. of Plea, Jan. 19, 1999 3:4-16. The transcript reads

1

as follows:

> THE COURT: Just so we understand each other, there's no misunderstanding. This is what we anticipate [d]oing. You're going to plead to Attempted Sale Third?
> THE DEFENDANT: Right.
> THE COURT: I'm going to sentence you to 4-1/2 to 9. You'll be given an opportunity to take TASC. I'm going to promise you 4-1/2 to 9. Not going to sentence you. You'll be given an opportunity to apply to TASC. If you are not found eligible for TASC it's going to be 3 to 6. If you are found eligible and you complete TASC, eventually get a conditional discharge; all right?
> If you are found eligible and you go to TASC and you drop the ball, in other words, you let the air out of the program, you get 4-1/2 to 9. Any other promises?
> THE DEFENDANT: No, sir.
> THE COURT: Do you understand?
> THE DEFENDANT: I understand.

In March of 1999, Craig entered Phoenix House, a residential program approved by TASC. Craig dislocated his toe, apparently through no fault of his own, in April of 1999. He was taken by employees of Phoenix House to the Veterans Administration Hospital in Northport. Thereafter, Craig had himself transferred to the Psychiatric Ward of the V.A. Hospital in Manhattan. Of his own volition, Craig eventually left the hospital in Manhattan.

The District Attorney for Suffolk County became aware of the events terminating Craig's relationship with TASC. He charged Craig with violating the conditions of his supervision. Craig was sentenced on August 26, 1999, as a second felony offender, to four and a half to nine years imprisonment.

On December 28, 2001, Craig filed a petition for a writ of habeas corpus in this court. Counsel was appointed for him. After a long delay by petitioner in his prosecution of this matter, it was heard and decided on November 3, 2005.

## II. Law

Section 2254 of Title 28 of the United States Code provides that an application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Craig urges his application under both grounds, claiming that the state trial court did not grant him a hearing before sentencing him as required by *Ricketts v. Adamson*, 483 U.S. 1, 107 S. Ct. 2680 (1987), and that the state trial court's decision was unreasonable.

*Ricketts* does not support petitioner's claimed right to a hearing before resentencing for breach of a condition of his initial conditional sentence. The issue in *Ricketts* was whether double jeopardy had been imposed upon a defendant who was retried after the State claimed he had breached the terms of his plea agreement. It only incidentally mentioned the scope of the hearing afforded to the petitioner by the trial court when determining whether he had breached the agreement and did not rule that such a hearing was required. *See Ricketts*, 107 S. Ct. at 2687-8 (Brennan, J., dissenting) (observing that the State Supreme Court had "denied [petitioner's] request to introduce other evidence that he maintained would demonstrate that at the time of sentencing the State shared Adamson's understanding of the agreement[]," and opining that "the Court of Appeals would have been justified in remanding for the evidentiary hearing denied

3

[petitioner] in state court").

Other cases do establish a right to a hearing before resentencing for breach of a condition of sentence. Due process protections apply to sentencing procedures, though with less force than at trial. *U.S. v. Fatico*, 579 F.2d 707, 711 (2d Cir. 1978). For example, before parole may be revoked, a parolee is entitled to "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." *Morrissey v. Brewer*, 408 U.S. 471, 484, 92 S.Ct. 2593, 2602 (1972). The Court of Appeals for the Second Circuit, in a case similar to the present one, applied *Morrissey* to a resentencing for breach of a condition of an initial sentence. *See Torres v. Barbary*, 340 F.3d 63, 69 (2d Cir. 2003) ("The determination to resentence for the breach of a condition of a sentence is analogous to the determination to revoke the parole of a parolee for failure to comply with the conditions of parole.").

In *Torres*, the petitioner had been charged with a felony and pled guilty on the understanding that he would be permitted to enter a rehabilitation program at the Phoenix House. Upon completion of the program, petitioner would return to court, his felony plea would be replaced by a misdemeanor plea, and he would be sentenced to time served in the rehabilitation program. *Torres*, 340 F.3d at 70. The state trial court used an identical procedure in the present matter. Tr. of Plea 3:4-12. In *Torres*, as here, the petitioner was accused of violating the conditions of his sentence and was resentenced to four and a half to nine years imprisonment. *Torres* at 70. Torres applied for a writ of habeas corpus. The district court denied the application, *Torres v. Barbary*, 2002 WL 1218276 (S.D.N.Y. Jun. 4, 2002), and the Court of Appeals reversed.

4

## III. Application of Law to Facts

Though the posture of this matter is similar to that of *Torres*, the conduct of the state trial court is not. The Court of Appeals rested its decision in *Torres* on the facts "unique to this case"—viz., the total reliance by the trial court on a hearsay report that itself contained only uncorroborated statements of unnamed informants; omission of any finding by the trial court as to the reliability of the informants or as to reasons for the non-disclosure of their identities; failure of the trial court to conduct some kind of hearing, including provision for the examination of Torres under oath; lack of preponderating evidence of Torres' wrongdoing; and the gross disparity between a sentence that would release Torres to society on a plea to a misdemeanor charge after completion of the residential program and the four and a half to nine year felony sentence to state prison that he received for violating the original sentence condition. *Id.* at 72.

The facts in the present matter differ significantly. The state court judge did not base his decision to resentence Craig on multiple hearsay. Rather, Craig stated directly that he had been discharged from the residential program because he was medically unfit. Tr. of Aug. 26, 1999 Sent. 5:9-12. The state court judge in Craig's case held a hearing, and allowed both Craig and his attorney to argue at length against imposition of the felony sentence. Tr. 2:14-13:25, 18:20-22:7.

Craig argued in the state courts, and again in this court, that he was not at fault for his discharge from the residential program. Though not without ambiguities, the transcript of the original colloquy quoted above between the state court judge and Craig suggests that fault was immaterial. The court indicated that Craig must complete the TASC program in order to have the advantage of the lowest possible sentence, that is, conviction of a misdemeanor. Craig had a

5

substantial criminal record—29 arrests in 18 years, 11 pending misdemeanor charges in state court and numerous failures in other rehabilitation programs—and it was not inappropriate for the court to explain to petitioner at that time, using language which Craig apparently understood, that he had to finish the program in order to show rehabilitation. It was, as respondent's counsel has suggested, a "no fault" arrangement. Thus, if the defendant were discharged for any reason, be it failure that was his own or beyond his control, there would be no basis for a finding of rehabilitation warranting a reduction to a misdemeanor.

This hearing satisfied the requirements of due process under the circumstances. *See Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976 (1974) ("the minimum requirements of procedural due process *appropriate for the circumstances* must be observed." (emphasis added)).

The *Torres* court faulted the state trial court for sentencing Torres to a term of four and a half to nine years when it had previously offered a plea of guilty to a misdemeanor and time served in the residential program (about six months). It should be noted that a four and a half to nine year sentence in the instant case was substantially less than the sentence that would have been imposed under the Rockefeller Drug Laws had Craig gone to trial and been convicted. The evidence against him was strong: he had sold drugs to an undercover officer and admitted doing so. As a second felony offender convicted of a Class B felony, he would have faced a sentence of nine to 21 years imprisonment. *See* N.Y. Penal Law § 70.06(3)(b).

At the hearing in this court, state defense counsel testified that it was for this reason that he did not move to set aside the plea and seek a trial: the risk to defendant if he had withdrawn his plea would have been too great. Four and a half to nine years provided a substantial advantage which counsel properly did not want to give up—as Craig apparently then well

6

understood.

In light of the evidence before it, the state trial court's conclusion was reasonable. The defendant and his attorney had an extensive opportunity to argue their case. The trial court was fully apprised of the record and, on the merits, the Appellate Division properly affirmed. There was no error on the part of the trial judge or the Appellate Division.

Even were the defendant now to try to amend his petition to claim inadequacy of state counsel, the petition would have to be denied because his state counsel provided effective representation when not seeking to set aside the advantageous deal that he had made and which has benefitted the defendant who is currently out on parole. (The trial court's evaluation of lack of rehabilitation is supported by Craig's subsequent imprisonment for violation of parole after he was released from prison.)

## IV. Conclusion

Petitioner is unable to demonstrate that the state court decision was contrary to clearly established federal law or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The petition for a writ of habeas corpus is denied.

No certificate of appealability is issued since no substantial constitutional issue is raised.

SO ORDERED.

Hon. Jack B. Weinstein

Dated: November 8, 2005
Brooklyn, New York

7